UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PARADISE HOGAN, on behalf of himself and all others similarly situated, ) | |
| Plaintiff, ) | |
| v. ) | C.A. No. 1:17-CV-10027-DPW |
| THE INSTORE GROUP, LLC; ) | |
| Defendant. ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

By his own admission, Plaintiff Paradise Hogan worked no more than 33 hours over the course of five months as an independent contractor of The InStore Group, LLC ("InStore"). Plaintiff admits that he was paid more than the minimum wage for every hour he performed services, that he never spent more than 40 hours performing services in any one week, and that he never commuted to more than one worksite on any day. As such, even if Plaintiff was improperly classified as an independent contractor, Plaintiff's claims must be dismissed.

But InStore did properly classify Plaintiff. Plaintiff performed services pursuant to an independent contractor agreement. Plaintiff had no established schedule and was instead able to choose projects if and when he was interested. Plaintiff's engagement with InStore was not exclusive. He provided the same services for numerous other companies, including InStore's competitors. Plaintiff performed those services without instruction or management from InStore. Thus, as applicable case law establishes, Plaintiff was properly classified as an independent contractor and his claims should be dismissed in their entirety.

After the close of business on Friday, November 17, 2017, Plaintiff filed a motion for leave to amend his Complaint. Although this Court previously rejected Plaintiff's request to extend discovery by an additional four months so that Plaintiff could add a new, unidentified defendant, Plaintiff's proposed amended complaint now seeks to add a new plaintiff. (*See* Doc 24-1). Moreover, Plaintiff's proposed amended complaint seeks to dismiss all of Plaintiff's claims except for misclassification under Massachusetts state law. During the requisite meet and confer, Plaintiff's counsel only informed InStore's counsel that Plaintiff sought leave to add a new plaintiff. Despite Plaintiff's counsel's knowledge that InStore's counsel was busily preparing this Motion and Memorandum of Law in Support, Plaintiff's counsel chose to hide from InStore's counsel that Plaintiff would also be asking this Court to dismiss five of his six pending claims. Had Plaintiff's counsel satisfied counsel's duty to meet and confer regarding Plaintiff's motion, InStore's counsel may not have needed to fully brief this Motion on all of Plaintiff's claims during Thanksgiving week and at great expense to InStore.

Because this Motion was due before this Court would rule on Plaintiff's motion for leave to amend, and because InStore believes the facts and authority cited herein provide ample bases for this Court to dismiss Plaintiff's Complaint in its entirety and with prejudice, InStore submits its Motion on all claims in Plaintiff's Complaint. That Plaintiff now asks this Court to dismiss virtually all of his claims should serve only to underscore the frivolous nature of Plaintiff's entire Complaint.

## RELEVANT FACTS

### I.  InStore's Business

InStore's business connects retailers and manufacturers seeking merchandiser services with independent contractor merchandisers seeking to perform such services. Statement of

Material Facts ("SMF") ¶¶ 1, 5.[1]   InStore contracts with retailers and manufacturers to provide labor for certain retail service projects, such as display building, surveys, and rack placing.   SMF ¶ 2.   InStore compiles those projects into an online database called Natural Insight, which InStore makes available to a network of independent contractor merchandisers.   SMF ¶¶ 5, 7-8.   An interested merchandiser can select a project from Natural Insight, though no merchandiser is required ever to select any project.   SMF ¶ 16.   InStore does not employ any merchandisers and has no employees who perform any project work.   SMF ¶ 6.

The only supplies a merchandiser needs to complete a project are a box cutter and a cell phone camera to verify the project was completed.   SMF ¶ 9.   InStore does not provide merchandisers with any tools, supplies, or equipment.   SMF ¶ 10.

InStore's clients, the retailers or manufacturers, establish the duties and instructions for each project.   SMF ¶ 12.   Merchandisers perform the projects at the retail location.   *See, e.g.*, SMF ¶ 24.   InStore has no control or direction over how, or if, merchandisers perform the projects and no InStore representative is on site at the retail location to monitor or direct merchandisers' performance.   SMF ¶¶ 14-15.

Once a merchandiser completes a project, the merchandiser logs on to Natural Insight, uploads a picture confirming completion, and submits an invoice for InStore to pay.   SMF ¶ 18.   InStore would only learn that a merchandiser failed to properly complete a project if the retailer or manufacturer informs InStore.   SMF ¶ 19.

---

[1] The deposition transcripts and all documents in the record cited herein are attached to the Declaration of Benjamin P. Fryer ("Fryer Decl.") filed herewith.

## II.        Plaintiff's Contract Engagement with InStore

Plaintiff signed InStore's Independent Contractor Vendor and Release Form (the "Agreement").  SMF ¶ 20.  The Agreement expressly states that the engagement is nonexclusive. SMF ¶ 22.  InStore never told Plaintiff that he could not work for other companies during his engagement with InStore, and InStore never communicated any performance expectations to Plaintiff.  SMF ¶¶ 22-23.

Plaintiff could select as many or as few projects as he liked.  SMF ¶ 29.  Plaintiff selected the projects he liked based on his personal availability and desired project locations.  SMF ¶ 25. Upon arriving at the retail establishment, Plaintiff would communicate with the retailer's manager and would occasionally receive materials from the retailer.  SMF ¶ 26.  Plaintiff never communicated with any InStore representatives regarding the performance of projects because InStore has no representatives at any client location and does not supervise projects.  SMF ¶ 15.

Plaintiff selected seven projects from InStore's Natural Insight database between April and September of 2015.  SMF ¶¶ 24, 30.  Plaintiff admits that he failed to perform two of those projects, despite accepting payment from InStore for their completion.  *Id*.  Had Plaintiff completed all seven projects, he would have performed less than 33 hours of total work.  SMF ¶ 24.  Plaintiff testified that he received at least $12.00 per hour for each project performed and that he "didn't see anything wrong" with the checks from InStore.  SMF ¶ 27.  InStore never disciplined Plaintiff despite Plaintiff's failure to perform two of the projects he claimed to have completed.  SMF ¶¶ 30-31.

## III.        Plaintiff's Work for InStore Competitors

Plaintiff's LinkedIn profile holds himself out as a merchandiser, presently available through his own company, Goblyn Group.  SMF ¶ 38.  That LinkedIn profile further indicates that Plaintiff worked as a merchandiser for a number of InStore competitors during his engagement

with InStore. *Id.*   On the same day that Plaintiff filed the instant action, Plaintiff filed a near identical action in this Court against on InStore competitor.  *See, Paradise Hogan v. SPAR Group, Inc., et al.*, No. 17-10024 (D. Mass. Jan. 6, 2017); SMF ¶ 39.  Plaintiff alleged in Paragraph 40 of that complaint that he engaged with an InStore competitor during his engagement with InStore. *Id*.

Plaintiff's tax returns indicate he engaged with additional companies during 2015.  SMF ¶ 34.  Given that Plaintiff failed to report his income from InStore to the Internal Revenue Service, Plaintiff's tax return may not contain all of his concurrent work during his engagement with InStore, and in fact contains no reference to the SPAR Group, Inc. *See id.*

### IV.      Plaintiff's Alleged Damages

Prior to Plaintiff filing this Complaint, Plaintiff's counsel requested and received from InStore records reflecting Plaintiff's claimed hours performing projects and payments from InStore.  Fryer Decl. ¶ 7.  Those records demonstrated that Plaintiff worked less than 33 total hours over a five month span, that Plaintiff was paid more than the applicable minimum wage for all hours, and that Plaintiff never commuted to more than one project in a single day.  *Id*.; SMF ¶¶ 24, 27.

The only damages Plaintiff now claims InStore owes him for his six causes of action are travel expenses, travel time, and "personal taxes."  SMF ¶ 36.  Plaintiff never purchased workers compensation insurance or any other general liability insurance.  SMF ¶ 32.  He never used or purchased any tools or supplies for InStore projects.  SMF ¶ 33.  Although Plaintiff testified that he declared and paid taxes on his earnings from InStore, Plaintiff's tax returns proves he did neither.  SMF ¶ 34.

## LEGAL ARGUMENT

### I.        Summary Judgment Standard.

Summary judgment is appropriate where is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotations omitted).  The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence."  *Id.* at 256-57; *see also, Pina v. The Children's Place*, 740 F.3d 785, 795-96 (1st Cir. 2014) ("If a nonmovant bears the ultimate burden of proof on a given issue, she must present definite, competent evidence sufficient to establish the elements of her claim in order to survive a motion for summary judgment.").  Because there is no genuine issue of material fact to prop up any of Plaintiff's claims, this Court should grant InStore's Motion.

### II.        Plaintiff's State Law Misclassification Claim Fails as a Matter of Law.

#### a.        Plaintiff failed to satisfy statutory prerequisites for his claim.

Massachusetts General Laws ch. 149, §150 provides:

> An employee claiming to be aggrieved by a violation of sections . . . 148 [of Chapter 149] . . . or section 19 of chapter 151 may, *90 days after* the filing of a complaint with the attorney general, or sooner if the attorney general assents in writing, and within 3 years after the violation, institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief, for any damages incurred, and for any lost wages and other benefits.

(Emphasis added).  Plaintiff falsely represented in his Complaint that he satisfied this prerequisite.

Compl. ¶ 9.  Because Plaintiff refused to produce evidence of his alleged filing, InStore submitted a Freedom of Information Act request with the Massachusetts Attorney General.  SMF ¶ 35.  The Attorney General confirmed that Plaintiff never filed the requisite complaint.  *Id.*  In response,

instead of amending the Complaint to cure the misrepresentation, Plaintiff filed a wage complaint with the Attorney General on September 29, 2017.

At least one Massachusetts court has held that failure to file the administrative complaint and wait the requisite 90 days does not divest a court from hearing a plaintiff's Massachusetts state law wage claims. *See Depianti v. Jan-Pro Franchising International, Inc.*, 465 Mass. 607, 611-14, 990 N.E.2d 1054 (2013). However, such ruling is in direct conflict with the plain letter of the statute, which plainly establishes a prerequisite to a lawsuit with a state law wage and hour claim. The statute requires the filing of a wage complaint with the Massachusetts Attorney General and then waiting 90 days to permit state government investigation. M.G.L. ch. 149, § 150. InStore respectfully requests this Court restore meaning to the legislature's expression and dismiss Plaintiff's claim under M.G.L. ch. 149, § 148B.

In any event, as this Court has previously held, Plaintiff should not be able to proceed until he corrects his misrepresentations. *See Norceide v. Cambridge Health All.*, 814 F. Supp. 2d 17, 27 (D. Mass. 2011) (dismissing state wage claim because Plaintiffs failed to amend complaint to represent late filing of complaint with Attorney General). Plaintiff had ample time to correct the misrepresentation, but refused to do so. Indeed, Plaintiff has since doubled down on this misrepresentation by repeating it in Paragraph 8 of his proposed Amended Complaint attached to his Motion to Amend filed on November 17, 2017. (*See* Doc 24-1).

  b. <u>Plaintiff's was properly classified under Massachusetts law.</u>

Massachusetts state law establishes a standard to determine whether an individual is properly classified as an independent contractor. M.G.L. ch. 149, § 148B. Under the statute, an individual who performs services shall be considered an employee unless the employer establishes that: (1) the individual is *free from control and direction* in connection with the performance of the service, both under his contract for the performance of service and in fact; (2) the service is

performed *outside the usual course of the business* of the employer; and (3) the individual is *customarily engaged in an independently established trade, occupation, profession or business of the same nature* as that involved in the service performed. *Id.* ch. 149, § 148 B(1)–(3).

No one prong of the statute should be interpreted so broadly that it would render other prongs superfluous. *See* A.G. Advisory re M.G.L. ch. 149, § 148B, at 6 (2008) ("[N]o prong should be read so broadly as to render the other factors of the test superfluous."); *Sebago v. Bos. Cab Dispatch, Inc.*, 28 N.E.3d 1139, 1149 (Mass. 2015) ("Insofar as the Attorney General's office is the department charged with enforcing the wage and hour laws, its interpretation of the protections provided thereunder is entitled to substantial deference . . . ." (internal quotation marks and citation omitted)).

### i.    *Plaintiff was free from InStore's control and direction.*

When evaluating whether a contractor is free from control, courts look at whether the company controls the details of the worker's performance, whether the company supervises the results of the worker's services, and the means and methods that the worker utilizes to perform the work. *Am. Zurich Ins. Co. v. Dep't of Indus. Accidents*, 21 Mass. L. Rep. 224, 224, 2006 Mass. Super. LEXIS 333, at *11-12 (Mass. Super. Ct. June 1, 2006). Courts also look at (1) whether the worker is paid by the job or by the hour; (2) whether the employer provides tools, equipment, or materials on the job; and (3) whether the relationship can be terminated without any liability on the part of the employer. *Id.* at 224, 2006 Mass. Super. LEXIS 333, at *12 (citing *MacTavish v. O'Connor Lumber Co.*, 6 Mass. Workers' Comp. Rep. 174, 1992 WL 253660, at *3 (Sept. 22, 1992)).

InStore's independent contractors are entirely free from InStore's control or direction in the performance of their services. SMF ¶¶ 11-19. InStore provides no instruction, as to the means or manner of performance, nor any supervision of the performance or results thereof. *Id.*

Instructions, if any, are established by the retailer or manufacturer.  SMF ¶ 12.  InStore does not discipline or reprimand a merchandiser related to his or her performance.  SMF ¶¶ 30-31.  InStore only requires that contractors send a picture of some projects to demonstrate completion before payment is made.  SMF ¶ 18.  InStore does not provide contractors with any tools, supplies, equipment, or materials.  SMF ¶ 10.  Merchandisers are free to take as many or as few projects as they would like and have complete control over the length of their engagement with InStore.  SMF ¶ 16.  InStore does not and cannot require a merchandiser to take a particular project or any project at all.  *Id.*  Rather than controlling the merchandiser's services, InStore merely facilitates the connection between the merchandiser and InStore's client.

Because InStore merchandisers operate free of control from InStore over the services performed, the first prong of the independent contractor analysis is satisfied.

        ii.     *Plaintiff's services were outside the scope of InStore's usual course of business.*

The services Plaintiff, like all InStore merchandisers, performed are outside the usual course of InStore's business.  Massachusetts courts have interpreted "usual course of business" to include work routinely done by the employer through its employees, but not work done by outside contractors.  *See, Am. Zurich Ins. Co.*, 21 Mass. L. Rep. 224, 2006 Mass. Super. LEXIS 333, at *17 (finding that a subcontractor was not engaged in the "usual course of the business" of the contractor even though both were in what could generically be described as the home improvement business); *contra Amero v. Townsend Oil Co.,* 25 Mass. L. Rep. 115, at *6 (Mass. Super. Ct. Dec. 3, 2008) (finding that the service provided by the plaintiff was within the usual course of the defendant's business where the defendant had employees who regularly provided the same or similar fuel oil delivery services as those provided by its independent contractors and noting that

the record showed no difference between the duties of those drivers characterized as employees and those categorized as independent contractors).

Importantly, InStore has *no* employees who perform the same services as Plaintiff. SMF ¶ 6. Rather, InStore employees secure contracts with retailers and manufacturers to match independent contractor merchandisers with projects at retail locations. The independent contractor merchandiser accesses InStore's database of projects to select the projects, if any, the merchandiser would like to perform, all according to the retailer or manufacturer's instruction. SMF ¶ 7. No InStore employees perform projects or supervise contract merchandisers who do. SMF ¶¶ 6, 15.

Because Plaintiff performed services outside the normal course of InStore's business of facilitating the connection between retailers or manufacturers and contract merchandisers, and no InStore employee performs merchandiser services, the second prong is satisfied.

### iii. *Plaintiff was engaged in an independent occupation.*

Through his LinkedIn profile, Plaintiff holds himself out to the public as a merchandiser offering services to numerous companies, including through his own company. SMF ¶ 38. Plaintiff's contemporaneously filed complaint in this Court against an InStore competitor establish that he contracted to perform his independent occupation even for InStore competitors at the same time Plaintiff contracted to perform that independent occupation for InStore. SMF ¶ 39. Along with Plaintiff's tax returns and testimony in this case, the evidence proves that Plaintiff was customarily engaged in the independent occupation of merchandising services—the same professional services for which he contracted with InStore—for numerous companies. SMF ¶ 38. The third prong of the independent contractor analysis, therefore, is satisfied, and this Court should find Plaintiff was properly classified as an independent contractor under M.G.L. ch. 149.

      c.      <u>Plaintiff's misclassification claim fails because he has no damages</u>.

Even if InStore misclassified Plaintiff as an independent contractor, his state law claim fails because he did not incur any damages. Under Massachusetts state law, if a worker is misclassified as an independent contractor instead of an employee, then his "damages incurred" equals the value of wages and benefits he proves he should have received as an employee, but did not. *Somers v. Converged Access, Inc.*, 454 Mass. 582, 584, 911 N.E.2d 739, 744 (2009). In *Somers*, the defendant company had both employee engineers and independent contractor engineers performing the same duties. *Id.* at 584-85, 911 N.E.2d at 744–45. The defendant argued that because the plaintiff, an independent contractor engineer, earned more as an independent contractor engineer than he would have earned as an employee engineer, the plaintiff suffered no damages. *Id.* at 593-94, 911 N.E.2d at 750–51. The court disagreed, finding that the defendant could not argue for a reduced damage award based on the defendant's rate of pay to employees who perform the same work as independent contractors. *Id.* The court noted that the plaintiff is entitled to the "damages incurred," including "any wages and benefits the plaintiff *proves* he was denied because of his misclassification as an independent contractor." *Id.* at 594, 911 N.E.2d at 751 (emphasis added). Thus, although a defendant company cannot set off higher pay rates for independent contractors when analyzing damage awards under the statute, the law is clear that a plaintiff is still required to *prove* damages suffered due to misclassification. *Id.*; *see also, Pius Awuah v. Coverall N. Am., Inc.*, 740 F. Supp. 2d 240, 243 (D. Mass. 2010) (determining that the plaintiff-franchisee was damaged by his misclassification *to the extent that* the plaintiff-franchisee paid premiums for insurance that the franchisor was required to provide under statute).

Here, Plaintiff has provided absolutely no evidence of any wages or benefits that he was denied because of his misclassification. In fact, Plaintiff admits InStore even paid him for projects Plaintiff failed to perform. SMF ¶ 30.

Unlike the defendant in *Somers*, InStore does not employ any merchandisers. SMF ¶ 6. InStore does not maintain two rates of pay, one offered for employee merchandisers and one offered for independent contractor merchandisers. InStore does not contend that it is entitled to a set off as a result of this different rate of pay. Instead, and at issue here, is the fact that Plaintiff cannot prove or even identify *any* wages or benefits that he would have been entitled to had he been an employee of InStore, or that InStore shifted to Plaintiff *any* costs that InStore was legally required to bear.

Plaintiff now contends InStore owes him only three categories of damages: (a) "travel time;" (b) "travel expenses" consisting of the expenses he incurred (bus fare, train fare, or both) related to his travel from his home to each of the five to seven projects he performed for InStore; and (c) "personal taxes." SMF ¶ 36. Plaintiff failed to produce *any* evidence to support *any* of the three categories of damages. SMF ¶ 37. In any event, it is well settled law that even if Plaintiff were an employee, he would not be entitled to any of the three categories of "damages" under either state or federal law.

Even if Plaintiff produced a shred of evidence to support the notion that InStore employees were paid for "travel time" but InStore independent contractors were not, neither Massachusetts state law nor the Fair Labor Standards Act ("FLSA") treat ordinary home to job site travel as compensable for employees. *See,* 454 CMR 27.04(4) ("Ordinary travel between home and work is not compensable working time."); 29 CFR 785.35 ("An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not worktime."). The record proves that Plaintiff commuted from his home to local retail establishments to complete projects,

and that he never commuted to more than one location in any one day.  Therefore, Plaintiff cannot predicate his misclassification claim on alleged "travel time" pay.

Similarly, Plaintiff has not produced a shred of evidence to support the notion that InStore employees were paid for "travel expenses" but InStore independent contractors were not.  Further, Plaintiff testified that no evidence exists to demonstrate any travel expenses Plaintiff incurred. SMF ¶ 37.  But even if Plaintiff could point to any such evidence, neither Massachusetts state law nor the FLSA requires employers to pay or reimburse employees for routine travel expenses. *Vazquez v. Navistar Int'l Transp.*, No. 09-434-JD, 2012 U.S. Dist. LEXIS 45107, at *31-32 (N.D. Ind. Mar. 30, 2012) (granting summary judgment on FLSA claims and holding that "the FLSA does not require the reimbursement of travel expenses"); *see also* 454 CMR 27.04(4) (providing that "[o]rdinary travel between home and work is not compensable working time," also providing that employees "shall be compensated for all travel time in excess of his or her ordinary travel time between home and work and shall be reimbursed for associated transportation expenses" only if "an employee who regularly works at a fixed location is required to report to a location other than his or her regular work site" (emphasis added)).  Therefore, Plaintiff cannot predicate his misclassification claim on alleged "travel expenses."

Finally, Plaintiff suffered no damages under his indecipherable category of "personal taxes."  Both employees and independent contractors must pay income taxes on earnings to the state and federal treasuries.  Plaintiff has not and cannot point to any evidence that InStore reimburses its employees, but not its independent contractors, for their state or federal income tax obligations.  Employers and employees must pay Federal Insurance Contributions Act ("FICA") on employment earnings.  Plaintiff has not and cannot point to any evidence that InStore reimburses its employees for FICA taxes, and neither employers nor independent contractors must

pay FICA taxes on compensation paid to independent contractors.  However, this analysis is largely irrelevant because Plaintiff never declared *any* earnings from his projects performed for InStore on his 2015 returns and paid no taxes on those earnings.  SMF ¶ 34.  Therefore, Plaintiff cannot predicate his misclassification claim on alleged "personal taxes."

Plaintiff has identified no other potential "damages incurred."  Plaintiff did not suffer any other damages because he did not purchase workers compensation insurance, did not purchase any equipment or tools, and did not incur any other fees or expenses in performing services for InStore. SMF ¶¶ 32-33.  As a result, even if "damages incurred" is defined as those benefits that he would have received had he been an employee, Plaintiff cannot show that he would have been entitled to any wages or benefits even if InStore employed any merchandisers, which it does not.  This failure to prove damages is fatal to Plaintiff's Massachusetts law misclassification claim.  *See, Somers*, 454 Mass. at 593-94.

### III.      Plaintiff's Federal Law Misclassification Claim Fails as a Matter of Law.

Plaintiff's misclassification claim under the FLSA fails for many of the same reasons as outlined above.  To state a valid FLSA claim, Plaintiff must establish (1) that he was employed by InStore; (2) that the work involved interstate activity; and (3) that he performed work for which he was under-compensated.  *Pruell v. Caritas Christi*, 678 F.3d 10, 12 (1st Cir. 2012) (citing 29 U.S.C. §§ 206(a), 207(a)(1)).

a.      Plaintiff's claim fails because he has no damages.

As an initial matter, Plaintiff failed to plead or adduce *any* evidence of work for which InStore provided inadequate compensation.  In *Pruell*, the court found the plaintiff's pleading insufficient when plaintiffs merely alleged they "regularly worked hours over 40 in a week and were not compensated for such time."  *Id.* at 13.  Plaintiff has plead far less here.  Moreover, Plaintiff has since abandoned any notion that he received inadequate compensation.  Plaintiff

testified that he "didn't see anything wrong" with the checks he received from InStore.  SMF ¶ 28.

Nor should he.  As Plaintiff admits, he did not work more than 40 hours in his entire five-month

engagement with InStore, much less in a single workweek.  SMF ¶ 24.  Plaintiff was never entitled

to any overtime payment.  And, as Plaintiff now readily admits, he was at all times paid in excess

of the applicable minimum wage for each hour he performed services.  Indeed, Plaintiff admits

InStore paid him for projects Plaintiff failed to perform; thus, InStore *overcompensated* Plaintiff.

SMF ¶¶ 24, 30.

Federal Rule of Civil Procedure 11(b) requires that any person presenting to the court "a

pleading, written motion, or other paper is certifying that to the best of the person's knowledge,

information, and belief, *formed after an inquiry reasonable under the circumstances*," that (1) the

purpose of the pleading is not improper; (2) the legal assertions are not frivolous; and (3) the factual

contentions have or are likely to have evidentiary support.  Fed. R. Civ. P. 11(b) (emphasis added).

Here, Plaintiff's counsel made pre-suit inquiry and received documentary evidence that Plaintiff

worked no overtime, received greater than the minimum wage for all hours he claimed to work,

and had no recoverable damages under the FLSA.  Nevertheless, Plaintiff filed this Complaint and,

after ten months and InStore's devotion of thousands of dollars in legal fees, Plaintiff now freely

admits he had no basis for filing a claim under the FLSA.  Such bad faith and frivolous claims

should not be countenanced.  Because Plaintiff has no damages under the FLSA, his claim must

be dismissed.

b.    Plaintiff was properly classified under the FLSA.

Because Plaintiff has no damages, no further inquiry is necessary.  However, further

analysis demonstrates that InStore properly classified Plaintiff as an independent contractor.  In

considering proper classification under the FLSA, courts look to the "economic reality of the

totality of the circumstances bearing on whether a putative employee is economically dependent

on their alleged employer." *Cavallaro v. UMass Mem'l Health Care, Inc.*, 971 F. Supp. 2d 139, 147 (D. Mass. 2013) (quoting *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998)).  While the First Circuit has not established a test for determining whether a worker is an employee or independent contractor under the FLSA, courts generally consider the following factors:

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business.

*Chebotnikov v. LimoLink, Inc.*, No. 14-13475-FDS, 2017 U.S. Dist. LEXIS 104577, at *34-35 (D. Mass. July 6, 2017) (citing *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1293 (3d Cir. 1991)). No one factor is dispositive.  *Id.*  The ultimate concern is whether, as a matter of economic reality, the worker is dependent upon someone else's business for the opportunity to render service or the worker is in business for themselves.  *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988).

As discussed in detail above, InStore's independent contractor merchandisers like Plaintiff do not depend on InStore for work.  Plaintiff holds himself out to the public as a merchandiser offering services to numerous companies, including through his own company. SMF ¶ 38. As Plaintiff's pleadings in this case, pleadings in his nearly identical case filed in this Court on the same day, testimony, LinkedIn, and tax returns prove, Plaintiff was in business for himself. SMF ¶¶ 34, 38-39.  He could and did sell his independent contractor merchandiser services to numerous companies at the same time, including InStore's competitors.  SMF ¶ 38. Plaintiff completed projects for multiple companies when and where he chose. SMF ¶¶ 25, 38. These facts establish

that Plaintiff was not dependent upon InStore for work and, therefore, was properly classified as an independent contractor.

Moreover, InStore did not control or even monitor the manner in which Plaintiff completed projects.  The retailers or manufacturers proscribe the requirements for each project.  SMF ¶ 12. InStore does not even know the manner in which the work is performed.  SMF ¶¶ 15, 19. Merchandisers can select as many or as few projects, from InStore or its competitors, as he merchandisers desire.  SMF ¶¶ 16-17, 29.  As such, merchandisers control their profit or loss based on their skill and availability.

InStore does not provide the merchandisers with any tools, equipment, or supplies to perform the projects.  SMF ¶ 10.  There is little to no permanency to the relationship between InStore and a merchandiser.  SMF ¶¶ 16, 29.  A merchandiser can accept one project and then choose never to log in to InStore's database again, or they can choose to perform multiple projects in one day. *Id.* The services performed by the merchandisers are separate from the services provided by InStore employees in the usual course of InStore's business.

Because InStore properly classified Plaintiff as an independent contractor, InStore is entitled to summary judgment on Plaintiff's FLSA claim.

**IV.        Plaintiff's Breach of Contract Claim Fails Because There Is No Breach.**

To prove a breach of contract claim, a plaintiff must show: (1) existence of a valid and binding contract; (2) the defendant breached the terms of the contract; and (3) plaintiff has suffered damages from the breach.  *Drexler v. TEL NEXX, Inc.,* 125 F. Supp. 3d 361, 374-75 (D. Mass. 2015) (citing *Aspect Software, Inc. v. Barnett*, 787 F. Supp. 2d 118, 127-28 (D. Mass. 2011)). Although, Plaintiff testified that he is unaware of the basis for his breach of contract claim, the only contract between InStore and Plaintiff is the Agreement.  SMF ¶ 20.

Plaintiff's Complaint alleges that InStore breached the Agreement because InStore "failed to fully compensate [Plaintiff and other similarly situated merchandisers] for their services." Compl. ¶ 69.  More specifically, Plaintiff alleges that he "suffered damages in the form of unpaid wages and benefits."  *Id.* ¶ 70.  As discussed in detail above, Plaintiff admits he was fully paid for each project he completed – and two projects he failed to complete.  SMF ¶¶ 27-28, 30. Plaintiff's breach of contract claim should, therefore, be dismissed.

Further, in the Agreement's only reference to compensation, Plaintiff stated:

> I acknowledge and agree that the stated fee I accept shall constitute my entire compensation for completing a client agreement and that I have no right to, and hereby waive any right to seek any benefits under any benefit programs that The InStore Group, LLC or its clients maintains for its respective employees.

SMF ¶ 20.  There is no promise in the Agreement to pay a certain amount for the services and there is no promise in the Agreement regarding wages and benefits.  Because Plaintiff does not, and cannot, point to any specific promise in the Agreement InStore breached, his claim fails as a matter of law.  *See, Drexler v. TEL NEXX, Inc.,* 125 F. Supp. 3d 361, 376 (D. Mass. 2015) ("[T]he failure to provide compensation not called for by a contract does not constitute breach.").

**V.**      **Plaintiff's Unjust Enrichment and Quantum Meruit Claims Fail Because the Independent Contractor Agreement Governs the Relationship.**

As a general rule, recovery under both quantum meruit and unjust enrichment presupposes that no valid contract covers the subject matter at issue in the dispute and, if "such a contract exists, the law need not create a quantum meruit right to receive compensation for services rendered." *Boswell v. Zephyr Lines, Inc*., 414 Mass. 241, 606 N.E.2d 1336, 1342 (1993); *Tomei v. Corix Utils. (U.S.), Inc.*, No. 07-11928-DPW, 2009 U.S. Dist. LEXIS 83416, at *68 (D. Mass. Sep. 10, 2009). Likewise, an equitable remedy for unjust enrichment is unavailable to a party with an adequate remedy at law.  *Tomei*, 2009 U.S. Dist. LEXIS 83416, at *68 (granting defendant-employer's

18

motion for summary judgment as to plaintiff's quantum meruit and unjust enrichment claims because two contracts govern the issues in dispute).

Because the Agreement covers the subject matter at issue in this case, Plaintiff cannot advance unjust enrichment and quantum meruit claims.  Moreover, Plaintiff testified that he is seeking the same damages under those claims that he is seeking under his state and federal wage and hour claims and his breach of contract claims.  SMF ¶ 36.  Because Plaintiff has an adequate remedy at law for his alleged claims, his quantum meruit and unjust enrichment claims fail as a matter of law.

**VI.**      **Plaintiff's Breach of Good Faith and Fair Dealing Claim Fails.**

The covenant of good faith and fair dealing is implied in every contract and is preserved so long as neither party injures the rights of another to reap the benefits prescribed by the terms of the contract.  *Uno Rests., Inc. v. Bos. Kenmore Realty Corp.*, 441 Mass. 376, 805 N.E.2d 957, 964 (2004) (citing *Kerrigan v. Boston*, 361 Mass. 24, 278 N.E.2d 387 (1972)).  The covenant may not "be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *Id.* at 385, 805 N.E.2d at 964 (citing *Cadle Co. v. Vargas*, 55 Mass. App. Ct. 361, 366, 771 N.E.2d 179 (2002)).

As detailed above with regard to his breach of contract claim, Plaintiff can point to no breach of a specific term of the Agreement.  Plaintiff has likewise pointed to no effort by InStore to prevent Plaintiff from reaping the benefits under the terms of the Agreement.  Plaintiff is attempting to create rights and duties under the Agreement that simply do not exist.  As a result, Plaintiff's claim for breach of the covenant of good faith and fair dealing fails.

## <u>CONCLUSION</u>

For the reasons set forth above, InStore respectfully requests the Court enter summary judgment for InStore on each of Plaintiff's claims.

Respectfully submitted this the 24th day of November, 2017.

/s/  Benjamin P. Fryer
Benjamin P. Fryer (pro hac vice)
Sarah H. Negus (pro hac vice)
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202-4003
Telephone:      (704) 331-1000
Facsimile:      (704) 331-1159
E-mail:          benfryer@mvalaw.com
                    sarahnegus@mvalaw.com

Christopher B. Kaczmarek (BBO No. 647085)
LITTLER MENDELSON, P.C.
One International Place, Suite 2700
Boston, MA 02110
Phone:          (617) 378-6000
Fax:              (617) 737-0052
E-mail:          ckaczmarek@littler.com

***ATTORNEYS FOR DEFENDANT***

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of November, 2017, a true and accurate copy of the foregoing pleading, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/  Benjamin P. Fryer
Benjamin P. Fryer